We'll hear argument next this morning in Case 16-309, Maslenjak v. United States. Mr. Landau. Thank you, Mr. Chief Justice, and may it please the Court. Section 1425A of the Federal Criminal Code authorizes the government to strip a naturalized American of citizenship if it was procured contrary to law. Our position in this case is simple. The words procured contrary to law require a causal link between the procurement of citizenship and the underlying violation of law. At the government's urging, the district court read such a causal link out of the statute, instructing the jury that it could convict if Petitioner obtained United States citizenship and violated at least one law governing naturalization. The instructions didn't require the government to prove that the underlying violation of law had any effect whatsoever on the naturalization decision. To the contrary, the district court read such a causal link out of the statute. Sotomayor, even assuming I bought your argument, that's a very broad statement, any effect. How about a natural tendency to effect? Landau Because you can never predict what will actually happen in the end. You can only talk about what might happen. And we would be happy. What we asked for was a materiality standard, which I think is very much along the lines that Your Honor just suggested. What's amazing here, and I think what makes this case so extreme, we're really at one end of the spectrum. The district court specifically instructed the jury, and here I quote, ''Even if you find that a false statement did not influence the decision to approve the defendant's naturalization, the government need only prove that one of the defendant's statements was false.'' Kennedy Well, but what Justice Sotomayor said, in essence, means sometimes we, causality is known only after the fact. You can have a statement that everyone thinks is immaterial, that's objectively immaterial, but it might have a causal connection at the end of the day. Landau Well, the government, if it wants to strip an American of citizenship, which is about the most grave thing it can do, probably short of taking away someone's Kennedy I fully understand that. Landau Right. Kennedy But it is the idea of what's material and what's immaterial, and what's a causal link and what is not, in a sense, can be understood and analyzed only after the fact. Landau Well, I think, Your Honor, the government has the burden, if it wants to show that the Petitioner or the Defendant procured citizenship contrary to law, the government has to show at the very least that, based on a false statement, that the false statement was material. Our basic submission was that the Petitioner or the Defendant procured citizenship contrary to law. Ginsburg This wouldn't be harmless, are you? You're arguing about material or not, but why isn't this obviously material? She lied about her husband's, what he was doing in Bosnia, right? She said he was trying to avoid military conscription when, in fact, he was in the service, in a unit that was committing atrocities. Under what circumstances would that be immaterial? Landau Your Honor, we would like a chance to argue the materiality question to a jury, which is the general decider of what is material under this Court's decision in Gauden. We did not have the chance, given prevailing Sixth Circuit law, which said there was no materiality, to contest this issue at trial. And we very much ---- Alito I understand that. What they were given refugee status based on a well-founded fear of persecution. Where and for what reason? Landau Well, this is the crux of the dispute, Your Honor. The government's position was that it was based on the fear of persecution by the Serbs based on her husband's evasion of military service. Alito Where? In Bosnia? Landau In Bosnia. Alito Yes. Landau Yes. And so this is now they're out of Bosnia. They're at the American embassy in Belgrade seeking refugee status. Alito Right. Landau And this was, in a sense, the heart of the dispute at trial. And, in fact, this I think relates also to Justice Ginsburg's question. The jury sent a note about what was the refugee status based on. We're a little bit confused, because we see here a document that says that it was apparently based on ethnic persecution by the Muslims in Bosnia. So I think this is really the heart of the factual dispute on what was the refugee status based on. Was it based on the ---- Alito So we don't know which it was based on? Landau No. That's the key issue that we would like to have an opportunity for our day in court. Alito Well, if this isn't the issue that we took cert to decide, but it does raise the question whether there's really anything at stake here. I assume that every Serb in Bosnia-Herzegovina is not entitled to asylum in the United States. Landau That's correct, Your Honor. Alito So merely being a Serb there where I think there are about 30 percent of the population would not be sufficient. Landau That is correct. No. And in this case, if you read the naturalization ---- excuse me, the refugee application, which is at Petap 62a to 64a, you can see that they were ---- the concern was their house was ---- they got death threats. Their house, I think, stones were thrown out the window. I mean, this was not just any particular area. This was a majority Muslim area within Bosnia. It was a ---- Bosnia was a patchwork of ethnicities at this point, and they were in a majority Muslim area, and they had to flee Bosnia. And I think this is really the crux of their argument, that this is not ---- that the whole issue about her husband's military service was really not the basis for it. And this is what we would like the chance to argue this before a properly instructed jury. We may win or we may lose on that. I mean, that's the issue that we would like the opportunity for our day in court on that issue, materiality, which is ---- Ginsburg Could you explain to me how the good moral character works into this? Because even if it's immaterial, it is a lie, and there was more than one lie in this application. The good moral character provision, Your Honor, which is 1101F6, 8 U.S.C. 1101F6, is our friend in this case, because you are absolutely right. We have conceded that she told a lie. But 1101F6 does not make every lie preclusive of good moral character. It only makes a particular kind of lie preclusive. There's a list of things that preclude good moral character, and among them is a lie for the purpose of obtaining an immigration benefit. That was one of the things that the government had to prove at trial, and they charged her with that. And if, in fact, she were convicted of that, that would preclude, that would disqualify her from naturalization, because you cannot establish good moral character categorically if you have told that lie for that purpose. But I think that underscores, Your Honor, that Congress did not intend to make every kind of lie on the form per se disqualifying. To be sure, they may be relevant to good moral character, but where Congress wanted to make a particular kind of lie preclusive of good moral character in 1101F6, it did so specifically. And so the applicant has the burden under Section 1427A3 of proving good moral character. And so, again, I think that section is our friend here, because it shows the anomaly of the government's position that basically any lie automatically makes you liable under Section 1015. It's Section 1015 under their view of Section 1425 as a pure look-through statute to 1015, sucks up any violation of 1015A, which, again, has no materiality there for them, has no materiality in 1425A. Well, that's the anomaly I'm stuck with, and maybe you can help me with, Mr. Landau, is that 1425 doesn't contain an express materiality provision. 1451 does in one provision, one clause but not another. Right. And then some of the predicate acts for 1425 do and others don't. Right. So it seems like linguistically we have to do some somersaults to get where you want to go, because no one would say that to violate 1425 you have to prove, say, a material genocide, right? I couldn't agree with you more, Your Honor. Okay. So we have to — it would be material — not only would we have to add the word material to 1425, it isn't there, we'd have to limit its impact to some predicate offenses and not others. Your Honor, let's — Right? Statement-based ones, I think your position is. That's a lot of linguistic somersaults to add to a statute, isn't it? I don't think so at all, Your Honor. I think you have to look — again, I think the contrast with civil denaturalization provision, 8 U.S.C. 1451a, is a very powerful point in our favor. How is that? Because it says illegally procure. Right. And then it talks about material misrepresentations in two separate clauses. Correct. And if your Honor wanted to take a — the most natural kind of textual reading, you would say, okay, here in 1425 we only have the general one, procured contrary to law. So the most natural, pure textualist approach would be to say, well, then that shouldn't cover statement offenses at all, because statement offenses were broken out, and that would render the statement offenses in 1451a reference superfluous. But Federico's interpreted the language procure and doing it illegally as anything in the course of the proceeding, right? So that's the answer to that, isn't it? No, but I think the point is, Your Honor, nobody is fighting that section 1425a is But I think what you can't do is — Oh, well, then that concession right there answers my problem, doesn't it? I mean, I might have misspoken if I said — 1425a includes bribery. It includes things to which the word material wouldn't naturally apply, which I think answers your question right there in the sense that it would have been nonsensical for Congress to put in a general illegally procured statute the word material. It just wouldn't fit there, because it's a general one. Where they use the word material in 1451, that's because historically 1451 has had illegally procured, the kind of the catch-all, and a separate statement one. But what you can't do is say 1425 applies — is a general catch-all, but when it's applied to statements, they're not material. I mean, I think that inference doesn't make sense. Alito, hasn't the briefing in this case really clarified what the issue is? And in a way, it seemed to me that what was being debated in the district court was the wrong issue about whether to charge the jury on materiality, because materiality is not in this statute. But as you have refined the argument, the issue is the meaning of the term procure, which may or may not mean exactly the same thing as materiality. I think you are absolutely correct, Your Honor, and that's one of the things. I mean, it's the same issue we've been arguing all along. I think you put the point exactly right. I think we have a textual basis for what had been a line of circuit court decisions going our way, starting in Puerta, that went our way based on policy concerns, which are very powerful, but really didn't grapple with the text of the statute. And I think we've been able to do that. Alito, but in your brief, you, I think, have possibly tried to read more into procure than you can, because in a number of spots, you seem — you argued that it means but for causation. Now, this morning, you have said that's not your argument. It's not — you don't have to prove that but for the false statement in the immigration proceeding, the person would not have been naturalized. Well, Your Honor, our position in this case was always relying on the line of circuit precedent going our way was that it was materiality. I think if you didn't — I mean, if we hadn't — but for the way this case evolved, where it was really based on materiality, I think there is a good argument that the most natural reading of procure contrary to law goes back to the general causation principles in our law, which, as this Court underscored just last week in Goodyear, is but for causation. Well, I don't know whether you can get that out of procured. Let me give you this example. Let's say there is a municipal ordinance that says that it is illegal to buy or sell a scalped ticket within 200 feet of the entrance of a stadium or a concert hall, and I buy, knowingly buy, a scalped ticket within 199 feet of the entrance of this facility. Now, in order for me to have procured that ticket contrary to law, would it be necessary to prove that I couldn't have purchased this from another scalper around the other side who was outside of the 200 feet, or I couldn't have gotten the ticket if I had waited in line at the box office? Your Honor, I think your question points out some of the very difficult questions of causation that are really, you know, implicated by the word procure and on which the Court, frankly, fractured in Cungus. And I think those are difficult questions that really haven't been briefed before you. I think our position here is really, at the very least, it has to be material. You can't establish a causal link in this context where the statement doesn't even have the tendency. And if I could refer the Court to the definition of materiality that was actually used by the majority in Cungus, this is at 485 U.S. at 772, a statement with a natural tendency to produce the conclusion that the applicant was qualified for citizenship. So the question is, is there a natural tendency to produce a conclusion that the applicant doesn't have access to research in the standard of materiality? And it really goes to qualifications for citizenship. The Judge, the my friends on the other side seem to have a pretty watered down version of materiality that will anything that might launch an investigation as, per se. Kagan. Can I ask you, Mr. Landau, about a different interpretation of the statute? Neither you nor the government supports it. But it's raised briefly in the government's, in footnote 4 of the government's brief, which is this idea that what we really should be doing here is we should be interpreting 1425 in exactly the same way that we interpret the civil statute, 1451, which talks about illegally procuring something. Right. And that both are limited to failures to satisfy the prerequisites to naturalization. And that's really what we should be thinking about when we interpret that. I think that that, you know, I think that makes a lot of sense. That this is really, that's what it's about. You're stripping somebody of their citizenship. So you kind of think the natural question is, were they qualified for the citizenship in the first place? I found footnote 4. And that would, in this case, presumably be because of bad character. Is that right? Well, I mean, no. And the government, I think, thinks a lot more than that. I mean, they did not, they tried to prove, but again, we have a general verdict. So we don't know whether they proved that her lie was for the subjective purpose of obtaining an immigration benefit. That's one way they could try to prove that if they did prove that, we would agree she would not be qualified. There's no question that there's a causal link there. If you can say the person wouldn't have been qualified. So I have no question. Sotomayor, I'm not sure this helps you under our case law. Under Ginsburg and Ness and that line of cases that the government relies on, if it's a prerequisite to getting citizenship, one of the, their argument is that a prerequisite is not telling a falsehood, an intentional falsehood, in your application. So how do you win, and how do you get causation into it? But that is, that is what I was trying to get at before with 1101F6, which goes to the things that categorically preclude a finding of good moral character, does not say any falsehood in the application process is enough to disqualify you. It says any falsehood for the purpose of obtaining a natural, an immigration benefit. If they prove that, then I think this goes back to Justice Kagan's question. They would prove that we were disqualified. And I think that line of cases is very consistent with footnote 4. I find it very consistent. Ginsburg. May I ask you to be concrete? Suppose you're right and there is a materiality requirement. You said you should have an opportunity to present that to a jury. On the facts that we have here, how could you argue this is immaterial? It is immaterial. These lies were immaterial. Well, we would go back to we'd get a witness to talk about, you know, how her two sisters got here, for instance, that they were victims of ethnic persecution by the Muslims in Bosnia, and that she would have gotten the refugee status regardless of the point about the husband's military service, that that was not the crux, that there was this was in a sense the issue. I think the jury note on Pet. Ab. 90 really nicely points out that the jury in this very case asked the judge a question. What was her refugee status based on? Was it based on fear of persecution by the Muslims, on ethnic persecution? Or was it based on fear of persecution by the ethnic Serbs based on his avoiding military service? We can see that that is a fair question to debate, but we would like an opportunity to debate that in front of a jury that is properly instructed and that at least that. Sotomayor, I'm sorry, I don't know how you can do that answer is only a part of the materiality issue. If she lied to get her husband a benefit, that's an immigration benefit that she was seeking. She had to lie about his military service, otherwise he would have been disqualified from the actual decision. They allege, and this is exactly right, Your Honor, that was one of the predicate offenses they alleged here, that one was Section 1015a, which we've discussed in our brief. The other one is that she didn't have good moral character because she lied to obtain an immigration benefit. But we have a general verdict here. We have no finding here that the jury actually agreed with the government that in fact she lied to obtain an immigration benefit. Sotomayor, is there any way they could have found otherwise? I understand her case. We don't know why she said that. That's, you know, one would have to speculate to say, people lie for many different reasons. They lie because they're embarrassed about certain things or, I mean, I think it would be speculative to say basically as a matter of law we can say there's only one reason she could have lied. I don't think we are basically in the practice of directing verdicts in criminal cases. Do you think this well-instructed jury would be entitled to hear evidence about Srebrenica and about her husband's military service? I think, you know, that that raises some interesting questions about the fact that she lied. I don't know how well you're going to do in front of this well-instructed jury. Well, Your Honor, again, I am not here to say that, to predict that people are going to be throwing roses in our path on remand. I do not deny that this could be a very tough row to hoe on remand. What I'm here to do is basically to say, as far as this case has gone along, the Sixth Circuit so far has thrown roses in the government's path and the lower courts to allow them specifically to get a criminal conviction to strip her of her citizenship without even proving that the statement is material. There is nothing in you can come up with a chart that goes from 1015a, which they say has no materiality, to 1425a, which they say adds nothing, is a pure look-through statute, and leads to the direct consequence of denaturalization. So under their view, any lie leads to automatic denaturalization. Congress could have come up with that regime, but it didn't, because I think Congress recognizes that not all lies are created equal. They come in different shapes and sizes. And that's why when Congress wanted to make one kind of lie particularly significant, it did so in 1101f6 by saying it has to be a lie for the purpose of obtaining an immigration benefit. If they prove that lie, they're golden. Then they actually win. The problem is, in this case, my client could have been convicted without that finding. We just don't know that. And so, again, I think part of the problem is here the government's fundamental conception of 1425a is wrong. They really do look at it basically as nothing more than a sentence enhancer for the underlying convictions. But it is its own distinct provision of the criminal code, with its own distinct statute of limitations, and its own very distinct penalties. For instance, in 1015a, the maximum imprisonment term is 5 years. Under section 1425a, you can go to prison for up to 25 years, plus automatic denaturalization, which flows as a result of 1451e. So 14, you know, and the essence of that 14, that distinct 1425a crime is the unlawful procurement. You're taking the unlawful predicate act and you're using it to procure citizenship. And so our basic position is if the government wants to strip you of citizenship on the ground that you were not qualified for citizenship, that it was procured contrary to law, it's very important for them to show that you would have been qualified if the truth – would have been disqualified if the truth had been known. And going back to your point, Justice Kagan, just to round out on footnote 4, I found that footnote incomprehensible because the government basically starts out with talking about a standard that we actually like, which is the disqualification standard for causation, essentially. But then they go on to say, well, that would have been met here. I think the most they can say is that could have been met here. And, you know, they can't possibly prove that as a matter of law, that this wasn't the contested issue at trial. So we're okay with the legal standard there, but the inference they draw in the next sentence, I think they use the wrong verb tense. That particular footnote, I think, if you focus on that, that can answer the case in a sense. Alitoson But failing to meet the qualifications for naturalization sounds to me like but-for causation. So is that your argument or is it something less than but-for? I know you can say it should be but-for, but I'll win if it's anything. Do you have a firm position or? If we were starting this on tabula rasa and we had not argued materiality below, I would say that it's but-for. I think that is the best interpretation of the statute. Alitoson I mean, that's awfully hard, because then you have to go back and determine even if somebody says something that has a real potential to affect the naturalization decision, you still would have to go back and show that in this case it actually did make the difference. And, Your Honor, this was the crux of the debate in the plurality opinion in Kungis between Justice Scalia and Justice Stevens. And I mean, that's a very interesting debate. But actually in the majority part of Kungis, in Part 2a, the majority there, the court, speaking through Justice Scalia, defined materiality I think in a way that is pretty darn close to but-for. It said — it's not quite there, but it said a natural tendency to produce the conclusion that the applicant was qualified for citizenship. So, again, I think the real crux here is not just might this have led to an investigation. It really has to go to the qualifications for citizenship, because that's what this whole thing is about. We're trying to figure out did we naturalize somebody who shouldn't have been naturalized. Roberts, Well, if that's the case, how do we distinguish between 1425a and b? a says that it has to be procured contrary to law. b says, you know, procured when it's not — when you're not entitled to it. It seems to me that b does the work you're describing, that the lie or the illegal act has something to do with the underlying entitlement as opposed to a lie or something illegal in the process of. Can you help me out with that? I'm stuck there. I think, again, you know, a is really about the procurement of citizenship. You know, that's an interesting point, Your Honor. The government has never really drawn any distinction between 1425a and b. They have to do something different, right? Well, no. One with hope. But, again, I think a is clearly about, you know, they both use the words procure or obtain, and, again, you know, I'm not sure. I think on rebuttal I'll address the difference between a and b, Your Honor. If there are no further questions. Roberts, Thank you. Thank you, counsel. Mr. Parker. Parker, Mr. Chief Justice, and may it please the Court. Naturalization is the highest privilege the United States can bestow upon an individual. It fundamentally changes the relationship between the government and the individual, and Congress has required that individuals who seek that high privilege must scrupulously comply with every rule governing the naturalization process. Well, scrupulously. I looked at, on the naturalization form, there's a question. It's number 22. Have you ever, and they've got ever in bold form, committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested? Some time ago, outside the statute of limitations, I drove 60 miles an hour in a 55-mile an hour zone. I'm sorry to hear that. I was not arrested. Now, you say that if I answer that question no, 20 years after I was naturalized as a citizen, you can knock on my door and say, guess what, you're not an American citizen after all. Is that right? Well, I would say two things. First, that is how the government would interpret that, that it would require you to disclose those sorts of offenses. Oh, come on. You're saying that on this form, you expect everyone to list every time in which they drove over the speed limit. No. Except when they were arrested. Well, what I think that particular question demonstrates is, and I will readily acknowledge, number one, that is a very broad question, and number two, I think that there is a great deal of ambiguity in what exactly is meant by crime and offense. Well, but just, it's worse. If you look in Black's, in Black's Law Dictionary, I looked up what's an offense, and this is what it says. It says it's a violation of the law, a crime, often a minor one. So you really are looking for the listing of every time somebody drove over the speed limit. But here's, here's what I think is important, though. What you would have to show to denaturalize someone, at least under Section 1425, would be that, number one, they were aware that that is what the question was asking for. They knew. Roberts. I drove over 55. Right. You were aware that that happened. You were aware that a truthful answer to that question would require you to disclose that. And yet, notwithstanding the fact that you had taken an oath to truthfully answer that question, you chose to deliberately lie. And if, if all of those things could be proved beyond a reasonable doubt, and that's an awful lot of ifs, and I think that that's. No, it's not a lot of ifs. I knew that I drove over 60. Okay. I understand the question. I saw that it even says ever. I researched it in Black's Law Dictionary, and it said an offense no matter how minor. The conditions that you set forth were fully satisfied, and I would say fully satisfied in everybody's case who drives at any time. And your position is still, you answer that question no, we can take away your citizenship. If we can prove that you deliberately lied in answering that question, then yes. How about, let me give you another example. One of the requirements is that you list any nickname that you've ever had. All right? When I was a child, not me, but some imagined applicant. I was very slight of built. I wasn't. But the applicant was. And his buddies were calling him the F word in terms of gender identity. He's not, never was, or is, and disclosed it in another part of the application. But that word embarrassed him, continues to embarrass him, and it has no importance to the decision-making process. Is that failure to disclose the use of a childhood nickname that is embarrassing, that has no relationship to anything whatsoever? Could you prosecute that person? No. Well, I think that you may be over-reading that particular question. I think what the, what that question is requesting are names that you yourself have gone by. And the reason that that is requested is because the FBI conducts a background check on all of these individuals, and it needs to know if there are other names that you may be known by that would come up. Exactly. Exactly. But I, I mean, I don't mean to push back against the hypothetical. I only think that what you're suggesting is that this is something that other people called you in childhood. And I don't think that that would be asked without a question. But. The point is, I think, of all these questions, the same thing. You read, you've read the briefs. The questions are unbelievably broad. All right. We can think of a thousand examples, not a thousand, but maybe only 500, of the kind that the Chief Justice gave. And it's, to me, rather surprising that the government of the United States thinks that Congress is interpreting this statute and wanted it interpreted in a way that would throw into doubt the citizenship of vast percentages of all naturalized citizens. I mean, isn't that? You explain, you explain to me why that isn't so. I don't think that it would throw into doubt. I, I really. You want 15 more examples such as the one that the Chief Justice gave? Well, but. I'm truly shocked by the one he gave, by the way. But, but. So, so what is the answer? You want to fight that? You want to say, no, I don't have listed on the page in front of me 15 such examples and the briefs didn't list 23 and, and we couldn't think of a hundred others? I think that we can. Look, I, I would readily agree with you that there are a number of questions on this form that, taken in isolation, would appear to be, if, if you gave an untruthful answer to one of those questions. Those are just the questions. Yes. I walked into the immigration hearing with a pocketknife in a government building. Boy, scout knife, I carry on my keychain. By the way, no one ever saw it. No one ever saw it. It was there the whole time. And then I walked out. Okay? Subject to deportation. No, I. I knew there was. I knew I wasn't supposed to do it. But I thought, oh, so what? And there it's been on my keychain for 30 years. No, I, I actually think that that would not. I think there are, there are a couple of questions there. I, I could just very briefly address the last one. I don't think that the crime that you just mentioned. Get my last examples. Okay. Look to the general example. And you've read through the ones in the brief. I don't want to repeat it. It's the same underlying question. There are a number of answers that could be given in the naturalization process that could be false and might seem to be in isolation immaterial, completely immaterial, for example. I mean, you could, you know, lie about your weight. Let's say you're embarrassed that you weigh 170 pounds. And so you claim that you weigh a hundred and fifty. The point, though, is Congress has specifically attended to all false statements under oath in these types of proceedings. It has specifically provided that it is a crime to lie under oath in the naturalization process, even about an immaterial matter. And it has provided that certain of those immaterial lies are categorical bars to naturalization. When Mr. Parker. Yes. I'm sorry. Finish up. I was just going to say that there are a number of reasons why Congress did not want to require that the government prove that a particular lie is material or immaterial in this context. And I think it's important to understand what those are. The first is, when an individual lies, even — remember, this has to be a lie under oath, after you have sworn that you will tell the truth and you are deliberately lying about something. It calls into question the veracity of your other answers, and that is very important in the naturalization process. Oh, please. I'm sorry. Go ahead. You'll be glad to know I don't have another of these questions for you. Although I am a little bit horrified to know that every time I lie about my weight, it has those kinds of effects. Only under oath. Yeah. Can I just ask you — can I ask you to take you through a few parts of your brief? Because I guess I felt a little bit confused on reading it, what your standard is. So on page 14, you say that the question is whether Petitioner violated the law in the course of procuring naturalization. In the course of procuring naturalization. Then on page 9 and page 17, you say that the question is whether a person procures naturalization in a manner that violates — that violates other laws. Which are we talking about? Is it in the course of or in a manner that violates other laws? Well, I — my apologies if that wasn't clear. I think we're just saying two ways of saying exactly the same thing. And that is exactly how the jury was instructed in this case. Yeah. I mean, it seems sort of different to me. In the course of is what creates the hypotheticals that Justice Breyer was talking about, about the penknife or the gun or something like that. But what — so what you're saying — but I can just choose. You can tell me your standard is in a manner that violates other laws. Well, I think that's right. And I think what that means is the same as what the jury was instructed in this case. Okay. So then, I mean, it makes me want to say, okay, what does it mean to procure naturalization in a manner that violates other laws? And then you talk about that. And you talk about that on — this is the only time I found in the brief where you actually suggest what it means to procure naturalization in a way that — in a manner that violates other laws. And you say on page 18, what that means is by violating those various laws, by violating those various laws. And that made me think that's a causal requirement. No. Well, I mean — You procure naturalization — this is, again, on page 18 — a person who knowingly procures naturalization in an unlawful manner, and then you clarify that that means by violating the laws Congress has enacted. So when you say that you procure naturalization by violating laws Congress has enacted, all you're saying is that — is that the naturalization results from the violation of those laws. Well, I — And I guess if that's not what you meant to say — and I don't mean to trick you here. Right. If that's not what you meant to say in this brief, although it suggests — I think it is what you say. But if it's not what you meant to say, how could it be anything else? Well, I — I think it is not. And my apologies if that sentence is unclear. I think it's actually described in more detail on the preceding page, on page 17. Our — our interpretation of that provision is that it means that you have to procure naturalization in violation of the laws that govern the naturalization process. These are laws that address naturalization. And — Well, number one, where is that in the statute? Well, I think that it is a necessary construction of the — of the phrase procure contrary-to-law naturalization. But it doesn't say in the statute. It just says contrary-to-law. It doesn't say what laws. It doesn't say laws governing the naturalization process. So that's — that's one issue. But — but that's a different issue from the one I'm talking about. Whatever laws it is, whether it's all laws or whether it's laws relating to the naturalization process, when you describe what you mean when you say in a manner that violates the laws, it's when you say — you say it's by — you procure naturalization by violating the laws. You very naturally — I think it's a totally naturally — natural construction of the language. You very naturally say you got the naturalization by violating those laws, meaning that the naturalization is the result of those — that violation. Because what else could you mean when you say — when you — when you have a naturalization and you have these violation of laws? Other than that the violation led to the naturalization? Well, again, I mean, just with respect to the sentence that you're quoting, I think what we were — what we were saying is by violating the laws, we were trying to describe what it means to act in an unlawful manner. I don't think we were trying to say that that means procurement of naturalization. But to describe that, you ended up using the Petitioner's formulation. And that seems quite natural to me, because I don't know what other formulation you could use to describe what it means to say in a manner that violates those laws. I don't think that it is natural, and let me explain why. The statute says procure contrary to law naturalization. We know what procure naturalization means. That means to obtain naturalization. And then the phrase is contrary to law. Well, the question then is contrary to what laws? I think that law has to be interpreted consistent with the two words that bookend that provision, procure and naturalization. Now, I don't think — Ginsburg. Can I ask you — Waxman. Yes. Ginsburg. It's maybe a simple-minded question, but how can an immaterial statement procure naturalization? Waxman. I think that the — Ginsburg. That's such a shorter statement of my question. It's perfect. Waxman. I think the answer is, we at least don't read the statute to require that the statement be procuring the naturalization. We don't read the statute to say that the violation has to procure it. And I think that this goes to a difference in how we may be using the term materiality here. The Petitioner is saying that it means that the person has to have lied about a material matter, meaning that a truthful answer would be more likely to get them naturalization than an untruthful one. Or, as Petitioner has also said several times, that it would be the but-for cause of getting that naturalization. But what Congress was concerned here with is not what people lied about. Rather, it was the fact that they lied. And the lie itself — Alito But let me ask you the same question, maybe the same question in a different form. Just give me a sentence that has this pattern. Jane Doe procured something. Jane Doe procured X. Contrary to law, where the thing that she procured had no potential — I'm sorry. Where the thing that she did had no potential to help her get X. Had no — well — She procured X. Contrary to law, but the thing that she did had no potential to help her get that thing. If what we are saying, as Petitioner has argued, is that it has to be something that — where you either could not get it or would be much less likely to get it if you did Y instead of X, I think one example might be, you know, you go to a gallery. You can procure the painting that's in the gallery in one of two ways. You can procure it unlawfully by stealing it, or you can procure it lawfully by buying it. If you steal it, it's entirely natural to say that you have procured the painting contrary to law, even though, presuming that you had the money, you could just as easily have purchased it. And that, I think, is the difference. The thing that was done there, stealing the painting, certainly had the potential to help the thief get the painting. That's true. It was the means by which they walked away with the painting. But I don't think that it is — that there was any causal relationship there of the sort that we've been talking about. What about what sort would you accept? That is, you heard two right there. Forget the word materiality. From your point of view, you don't. Okay? And I take it, but for a condition, you don't. And I take it that approximate cause, you don't. But what about had a tendency for — to affect a reasonable immigration officer in his judgment? What about that? What about the one you just used? It was a means towards getting. That's tougher than you're usually accepting. But which ones — here, I have about five. It influenced the decision. It had the possibility or tendency to influence the decision. Do you say all those are wrong? I think they are, but the reason is that Congress has said — Well, which one do you accept? I don't think I would accept any of them. I think that the problem here is that Congress has said — Well, I know you say Congress said that, but the question, of course, for us is whether Congress said that. And we have some words. So I want to know if those words in your mind are capable of any interpretation that suggests any kind of tendency of the unlawful act to move an immigration judge, if not this one, some other one, towards a plus decision. I don't think so because Congress has said, for example, that even — and this was the Court's decision in Congess, that even an immaterial false statement about the most immaterial of matters can be a categorical bar to the ability of the person to be naturalized. And the point there is that it would be very odd, I think, to read the statute to say that if a person procures naturalization despite having done that, that somehow that was not done contrary to law because materiality or some other formulation would be required in addition in order to establish that. Kagan. Let me try this another way. If you take this phrase, which is a kind of stilted phrase because the contrary to law comes in between, but all it really means is procure naturalization illegally. Do you agree with that? I think so. The contrary to law naturalization is procure naturalization illegally. Yes. If you have violated the laws governing naturalization, yes. Right. So the idea that procuring naturalization illegally somehow includes illegal acts that have no effect on naturalization or on procuring naturalization, it's just not how we use language. How could it be that that is true? But it's not — well, my disagreement there is that it is not that it has no effect. The effect, though, is the fact that the person lied. It is not what the person lied about. But it has no effect on the decision to naturalize. Whether a truthful answer would have had an effect on the decision to naturalize versus an untruthful one, I think that Congress has said quite clearly that that is not the relevant consideration for purposes of these — applying these statutes. Yes, and I guess what I'm saying is that how do you use that phrase in a statute and not mean that there has to be a relationship between the illegal acts and the procurement of naturalization? Well, I think there does have to be a relationship. I — we don't dispute that. We just don't think that it's a causal mechanism. Will you tell us what that relationship is? That relationship, in our view, is that the laws have to be the laws governing naturalization. And what that means is there are laws governing who may be naturalized and there are laws governing how they must do so. If that's true, though, Mr. Parker, what do you do with 1425B? What's the difference between A and B on the government's account? A says you procure it contrary to law, naturalization. B says you procure naturalization when you're not entitled to. Well, I think that the reference to being entitled in subsection B reinforces our point that contrary to law doesn't necessarily mean that you weren't entitled to the naturalization. It means that you violated the rules that Congress has set forth governing who can be naturalized and how they must do so. So B would be you were — you were not entitled to begin with, and A is you may have been entitled but you lied in the process of. I think that's a fair reading. I mean, I would note that B also sweeps more broadly than A because it includes things like obtaining a certificate of naturalization rather than the actual procurement of naturalization. I think — Sotomayor, the government, the Congress doesn't have the power to denaturalize someone. At least so far we haven't let them do that as punishment for a criminal act. So go back to Justice Kagan's question about footnote 4 in your brief and your adversary's position that if it's a prerequisite to naturalization, that's what this means, that that's the only time Congress can deprive you of citizenship is when something actually would have barred you from getting it. Well, the only point that we were trying to make in that footnote was that — I know the point you were trying to make, but answer the point he's made. Yes. And the point I've made, which is if Congress doesn't have the power ex post facto to denaturalize you, we're giving them this power. Should we be reading it narrowly or broadly? Well, I don't think that there's a — I think that it shouldn't necessarily be read broadly, but I think that any fair reading of the statute would include this. And let me just explain what we think about eligibility because, frankly, I think that it may be a way to get to the same point. There are — May I ask you before that? Yes. We've been concentrating on this statute. Is there any other statute in the entire U.S. criminal code, any false statement statute that is violated by an immaterial false statement? Yes. Section 1014 is — criminalizes false statements made to a bank, and in Wells, this Court held that it can be a completely immaterial false statement. I think Justice Sotomayor has a question. Yes. So let me just explain for a moment how eligibility would work in this context. Let's say that somebody makes a false statement in their naturalization process, and that false statement is discovered. One of two things will happen. Either the false statement is of the sort that is mentioned in section 1101F6, and therefore is a categorical bar to naturalization. You are immediately deemed ineligible. Is that the false statement for the purpose of obtaining immigration benefits? Yes. And it can be an immaterial one, yes. Okay. So that would be one. If it is not that, let's say it's a violation of section 1015, but it didn't involve oral testimony. And in Kunji's, this Court held that 1101F6 requires oral testimony. Then what happens is it would have to be analyzed under the residual provision of 1101F, which says the fact that we have enumerated certain grounds above does not mean that those are exclusive and there are other grounds on which the person's good moral character may be denied. What happens at that point is either the person could be denied because they are actually ineligible based on that statement, or they could be denied naturalization because at every stage the alien bears the burden of persuasion and it could be concluded that they did not satisfy their burden of establishing eligibility. What they have to do in order to obtain naturalization, notwithstanding having made a false statement, is do what the regulations refer to as demonstrating extenuating circumstances. And this is a whole ---- I'm sorry? Demonstrating what? Extenuating circumstances. So this would be a whole record evaluation by the agency of all of the circumstances involved, and the alien bears the burden of doing that. If ---- Sotomayor, in which of those processes has there ever been the kind of immaterial statement that the Chief Justice gave, lying about a traffic ticket where there's been no injury to anybody and no claim of reckless driving other than the speeding? Where has the agency ever denied naturalization because of an immaterial statement? I'm not aware of a particular case in which that has occurred. These are not published decisions, so I couldn't say. But I would note, however, that if the alien, if that lie is not discovered and the alien manages to procure naturalization, notwithstanding it, the government's position would be that at that point, that person has procured naturalization in a circumstance in which they are not eligible, because as a factual matter, they had lied, and because they lied, they were then ---- it was incumbent upon them to show extenuating circumstances. They did not do that, and so they would be ineligible. I would also like to note, though, that ---- Breyer. I would like to note, though, that given the seriousness of your interpretation of 1425 and the words that say in 1451, shall be deprived of his citizenship, given the seriousness of that, your interpretation would raise a pretty serious constitutional question, wouldn't it? I don't think so. No. It's not a serious constitutional question of whether an American citizen can have his citizenship taken away, because 40 years before, he did not deliberately put on paper what his nickname was or what his speeding record was, 30 years before that, which was, in fact, totally immaterial. That's not a constitutional question. Well, I don't think so, because Congress has, number one, specified that immaterial false statements are grounds for denying naturalization, but I also would note that ---- I mean, there are a few responses. One is the criminal provision, at least, has a 10-year statute of limitation, so it wouldn't be 40. But I think that it's important to remember that denaturalization is not like a lifetime bar on citizenship. All denaturalization does is it returns you to the status of a lawful permanent resident. You then have to wait 5 years, and if after the end of those 5 years you can demonstrate that you're entitled to citizenship, you can be renaturalized. It also doesn't ---- Roberts I don't know if it's a problem of a constitutional statute, but it is certainly a problem of prosecutorial abuse. If you take the position that refusing to ---- not answering about the speeding ticket or the nickname is enough to subject that person to denaturalization, the government will have the opportunity to denaturalize anyone they want, because everybody is going to have a situation where they didn't put in something like that, or at least most people. And then the government can decide, we're going to denaturalize you for other reasons than what might appear on your naturalization form, or we're not. And that, to me, is troublesome to give that extraordinary power, which essentially is unlimited power, at least in most cases, to the government. That strikes me as a serious problem. I certainly understand your concern, Mr. Chief Justice. All I can say is, I don't think that the statute says anything that would necessarily prevent denaturalization from occurring, but there are a number of other ---- Kennedy It seems to me that your argument is demeaning the priceless value of citizenship. You say, oh, it does. He'd just be restored to his or she to her former status. That's not what our cases say. That's not what citizenship means. You're arguing for the government of the United States, talking about what citizenship is and ought to mean. Right. And I ---- well, we would readily agree that it is a priceless treasure. We are not disputing that at all. One of the consequences of the priceless nature of citizenship is that Congress has surrounded it with a number of protections to ensure that the individuals seeking it square every corner and are absolutely and completely honest. I do want to point out, though, that there are a number of other protections built into the system that would prevent the sort of problems that the Chief Justice has raised. And one of those is that we would have to prove beyond a reasonable doubt that this was a deliberate lie. I think that convincing a unanimous jury of that is very difficult. I also would note that there are 780,000 naturalization petitions filed every year. It would be an extraordinary undertaking to do what you're suggesting. I don't want to ---- Ginsburg. Before you finish, may I ask you one other thing about the character of this statute? So we have here for denaturalization a parallel civil way to get a person denaturalized and a criminal. In other cases where there are parallel criminal penalties, civil penalties, is there any other one where the criminal disqualification is easier to establish than the civil one? May I answer? Sure. We would say no, because we believe that the language illegally procured in the civil provision is effectively synonymous with procurement contrary to law. It would only be that in the criminal provision you have to satisfy the statute of limitations and the beyond a reasonable doubt standard and the mens rea requirement. Thank you. Thank you, counsel. Five minutes. Mr. Landau. Thank you, Mr. Chief Justice. I'd like to make three quick points, if I might. First, to go back to Justice Gorsuch's question that he asked both sides about the relationship between 1425a and b, I think they are largely overlapping. It is true that the ---- b covers some more things that a doesn't cover. b uses the language entitled. That may inform exactly the nature of the causal link that one would infer in a, but I think it doesn't in any way affect our central argument here, which is there has to be some causal link, that it's absolutely ---- you cannot procure something contrary to law based on an immaterial false statement, which by definition is the kind of thing that doesn't even have the tendency to do that. Again, to go back to Kunjus, the natural tendency to produce the conclusion that the applicant was qualified for citizenship. Second, the government said a number of times, oh, yeah, it's not a big deal. We ---- you know, the government under Kunjus had said you don't need a material false statement. And it said in Wells also that in response to another statute where that was true. In both Wells and Kunjus, and we make this point in the 1015 section of our brief, the court made the point of addressing the concerns that taking out materiality would open up the defendant to an incredible array of sanctions based on something that, you know, presumably Congress doesn't mean to criminalize minor offenses. But it said there's a purpose requirement in both of those. And that's what gave the court comfort in saying you didn't need materiality in addition to that purpose requirement. So it is not true when the government is saying, oh, immaterial false statements are a basis for denaturalization under 1101F6. That is only, as Kunjus stressed, because there is already a for-the-purpose-of requirement in that very provision. And the same exact thing is true in Wells, which is based on Kunjus. The government has identified no case in the history of American law where this Court has upheld a statute without a materiality requirement if there wasn't some functional equivalent to materiality such as a purpose requirement. And I think some of the hypotheticals that were posed here show just how drastic this would be and how extreme the government's position is here. The third and final point I'd like to make is that I think, as some of Justice Kagan's questions pointed out, the most natural way to read procured contrary to law is to have it mean procured by means of a violation of law. Contrary to law is an adverbial phrase that modifies the way in which you procure it. It's fully ---- Kennedy, do you read Wells as having a causal requirement, as being a causal requirement? I think it's ---- it basically says for the purpose of we find it ---- The Speaker knows the falsity of what he says and intends to influence the institution. Correct. I think that that's ---- basically, that's why I think it's functionally the equivalent of materiality. So I think the Court felt some comfort in Wells. The Court didn't just say, oh, we are fine with, you know, we're dispensing with de minimis non curat lex. That is the background norm against which all of our laws are enacted, because we have to assume that this ---- the government ---- you have to look at how the harshest prosecutor in the land will apply this. And I think the questioning today makes it chillingly clear that the government's position in this case would subject all naturalized Americans to potential denaturalization at the hands of an aggressive prosecutor. That is not what Congress intended. That is not what is in the language of the statute. Nothing in the statute compels this Court that this would be breaking entirely new ground, and we urge this Court not to go there. Thank you very much. Thank you, counsel. The case is submitted.